# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

COREY DEWBERRY,
ADC #103900                                                                              PLAINTIFF

V.                              2:14CV00137 KGB/JTR

RODNEY FORD, Captain,
East Arkansas Regional Unit, et al.                                        DEFENDANTS


## RECOMMENDED PARTIAL DISPOSITION

The following Recommended Partial Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

# I.  Introduction

Plaintiff, Corey Dewberry, is a prisoner in the East Arkansas Regional Unit ("EARU") of the Arkansas Department of Correction ("ADC").  He has filed this *pro se* § 1983 action alleging that: (1) on December 18, 2013, Defendants Ford, Munn, Scott, Williams, Westbrook, and Burl failed to protect him from being attacked by two prisoners; and (2) Defendant Thorne issued a false disciplinary to retaliate against him for filing grievances about the December 18, 2013 incident.  *Docs. 2 & 5.*

Defendants have filed a Motion for Partial Summary Judgment, and Plaintiff has filed a Response.  *Docs. 27, 28, 29, &  34.*  For the following reasons, the Court recommends that: (1) Defendants' Motion be granted; (2) all official capacity claims be dismissed, with prejudice, pursuant to the doctrine of sovereign immunity; (3) the individual capacity claims against Defendants Scott, Williams, Westbrook, Burl, and Thorne be dismissed, without prejudice, due to a lack of exhaustion; and (4) Plaintiff be allowed to proceed with his failure to protect claims against Defendants Ford and Munn, in their individual capacities only.[1]

---

[1]     Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact.  *Celotex,* 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial.  *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

## II.  Undisputed Facts

The *undisputed* facts are as follows:

1.      In December of 2013, Plaintiff was living in barrack 8 at the EARU, along with Frank Askew, Askew's nephew, and numerous other prisoners.  *Docs. 2 & 5.*

2.      On December 9, 2013, Plaintiff and Askew got into a heated argument about Plaintiff's refusal to do the laundry. Soon thereafter, Plaintiff was moved to barrack 3. *Id.*

3.      On December 17, 2013, Plaintiff was moved back into barrack 8, where Askew and his nephew were still living.  *Id.*

4.      On December 18, 2013, Askew and his nephew beat Plaintiff with a cane and stabbed him with a shank. *Id.*

## II.  Discussion

### A.      Official Capacity Claims

Plaintiff has sued all the Defendants, in both their individual and official capacities, but monetary damages are the only form of relief he seeks.  *Docs. 2 & 5.* The doctrine of sovereign immunity prohibits Plaintiff from obtaining monetary damages against state actors, such as Defendants, who are named in their official capacities. *See Zajrael v. Harmon*, 677 F.3d. 353, 355 (8th Cir. 2012); *Larson v.*

*Kempker*, 414 F.3d 936, 939-40 (8th Cir. 2005). Thus, Plaintiff's claims against Defendants, in their official capacities, should be dismissed, with prejudice.

## B.   Individual Capacity Claims

Defendants Williams, Westbrook, Burl, and Thorne argue that they are entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies against them. *Doc. 27.* The Court concludes that this argument is well taken.

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81-89-91 (2006).

The PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340

F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must fully comply with the specific procedural requirements of the incarcerating facility. *Id.*

To fully and properly exhaust administrative remedies within the ADC, a prisoner must file: (1) an informal resolution with the designated problem solver; (2) a grievance with the Warden if attempts at informal resolution are unsuccessful; and (3) an appeal the denial of a grievance to the ADC Deputy/Assistant Director. *Doc. 27, Ex. B* (ADC Adm. Dir. 12-16 § IV(E) through (G) (2012)). Importantly, the ADC's exhaustion policy requires inmates to "specifically name each individual" involved, and those instructions are repeated on the grievance forms themselves. *Id.* (§ IV (C)(4), (E)(2), and (N)). Finally, the ADC's exhaustion policy advises prisoners that their federal lawsuit may be dismissed if they fail to comply with those requirements. *Id.*

Grievance EAM 14-39 is the only fully exhausted grievance that Plaintiff filed

about the December 18, 2013 attack.[2]  In that grievance, Plaintiff alleged that, on December 17, 2013, Defendants Munn and Ford returned him to barrack 8, even though they knew Plaintiff recently had a heated argument with Askew and was in danger of being harmed.  *Doc. 27, Ex. C at 1-3.*  Defendant Warden Burl denied grievance EAM 14-39 on the merits, and Plaintiff renewed his allegations against Defendants Munn and Ford on appeal.  *Id.*  Thereafter, the ADC Deputy Director found that Plaintiff's appeal "had merit," and that he would instruct Warden Burl "to take corrective action against staff."  *Id.*

The Court must now determine if grievance EAM 14-39 is properly exhausted as to the specific claims Plaintiff has raised in his pleadings against each of the Defendants. *See Burns v. Eaton*, 752 F.3d 1136, 1137 (8th Cir. 2014) (clarifying that a prisoner must exhaust his specific claims against each separate defendant).

### 1.   Defendants Munn & Ford

The parties *agree* that grievance EAM 14-39 is proper exhaustion as to

---

[2] Plaintiff also filed grievances EAM 14-98, and EAM 14-113 about the December 18, 2013 incident. *Doc. 27, Ex. C.*  However, ADC officials rejected both of those grievances, *without reaching the merits*, because they were duplicative of the claims Plaintiff had already raised in grievance EAM 14-39. *Id., Ex. B.*  (ADC Adm. Dir. 12-16 § IV(G)(7) (prohibiting the filing of "duplicate" grievances)).  Because grievances EAM 14-98 and EAM 14-113 violated the ADC's grievance procedure, they cannot be considered when determining whether Plaintiff has properly exhausted his administrative remedies regarding the claims he has raised in this federal lawsuit. *See Woodford*, 548 U.S. at 90 (explaining that prisoners must properly comply with the prison's grievance procedure).

Plaintiff's failure to protect claims asserted against Defendants Munn and Ford. *Docs. 27 & 34.*

## 2. Defendant Thorne

Plaintiff did *not* name Defendant Thorne in grievance EAM 14-39. This violated one of the requirements of the ADC's exhaustion policy and prevented ADC officials, who reviewed grievance EAM 14-39, from considering the retaliation claim that Plaintiff is now asserting against Defendant Thorne. *Doc. 27, Ex. B* (§ IV (C)(4), (E)(2), and (N)). Accordingly, ADC officials were never given the opportunity to reach the merits of this claim against Defendant Thorne. Thus, Plaintiff's retaliation claim against Defendant Thorne should be dismissed, without prejudice, due to lack of exhaustion.[3] *See Jones,* 549 U.S. at 211 (holding that: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

## 3. Defendants Williams and Scott

In contrast, Plaintiff specifically named Defendant Williams and Scott in grievance EAM 14-39. However, in his grievance he stated only that, on December 17, 2013, these two Defendants escorted him from barrack 3 to barrack 8. *Doc. 27,*

---

[3] On July 28, 2015, the Court entered a Recommended Partial Disposition concluding that Plaintiff's claims against Defendant Thorne also should be dismissed, without prejudice, due to a lack of service. *Doc. 35.*

*Ex. C.*  Plaintiff did *not allege* that either Defendant Williams or Scott knew that he had previously gotten into an argument with Askew, or that he otherwise was in danger of being harmed if he returned to barrack 8. Accordingly, ADC officials reviewing his grievance never investigated or reached the merits of any failure to protect claims against Defendants Williams or Scott.  *See Jones,* 549 U.S. at 219 (explaining that one of the purposes of the PLRA's exhaustion requirement is to give prison officials the first opportunity to investigate and address problems arising in their institutions). Thus, Plaintiff's failure to protect claims against Defendants Williams and Scott should be dismissed, without prejudice, based on his failure to properly exhaust those claims.

### 4.    Defendant Burl

In grievance EAM 14-39, Plaintiff claimed that, during the December 9, 2013 argument with Askew about Plaintiff's refusal to do the laundry, Askew allegedly stated that he was to going to "tell Daddy Burl."  *Id.*  Importantly, Plaintiff did *not* allege that Defendant Burl was aware that Plaintiff  might be harmed by Askew or any other prisoners in barrack 8. Instead, in explaining the nature of his argument with Askew, Plaintiff made only a passing reference, in EAM 14-39, to the fact that Askew mentioned "Daddy Burl."

While Defendant Burl later read and denied grievance EAM 14-39, the passing

reference to "Daddy Burl" in that grievance in no way put ADC officials on notice of the claim that Plaintiff is now making that Defendant Burl somehow failed to prevent the attack.[4]  *See Champion v. Akins*, Case No. 12-2467, 2013 WL 656797 (Feb. 25, 2013 8th Cir. 2013) (finding no exhaustion against where a prisoner named two wardens "as readers" of his grievances, but did not allege that they were personally involved in the violation of his constitutional rights).  Because Plaintiff failed to exhaust the failure to protect claim he is now asserting against Defendant Burl, that claim should be dismissed, without prejudice.

## 5.    Defendant Westbrook

In the Amended Complaint, Plaintiff alleges that, when he returned to barrack 8, on December 17, 2013, Askew threatened him by saying: "This may be a set up, looks like some of Westbrook's mess. [Your] snitching butt is gonna get up out of here."  *Doc. 5 at 7-8.*  Soon thereafter, Plaintiff allegedly "stopped" and "advised"

---

[4]  It is unclear whether Plaintiff is also alleging that, *after* the December 18, 2013 attack, Defendant Burl violated his constitutional rights by failing to take corrective action against Defendants Ford and Munn.  Clearly, Plaintiff did not raise a corrective inaction claim against Defendant Burl during the ADC grievance process.  *Doc. 27, Ex. C.*  Additionally, that claim fails, as a matter of law, because a corrective inaction claim is premised on a continuing constitutional violation that a defendant could have stopped.  The December 18, 2013 attack by Askew was an isolated incident.  Thus, any alleged failure by Defendant Burl to discipline Defendants Munn and Ford – after the attack occurred – was not the proximate cause of Plaintiff's injuries.  *See Schuab v. VonWald,* 638 F.3d 905, 921 (8th Cir. 2011) (explaining that a court may dismiss a prisoner's § 1983 action  "where the casual link is so tenuous as to justify taking it from the trier of fact"); *Latimore v. Widseth,* 7 F.3d 709, 716 (8th Cir. 1993) (holding that a defendant is entitled to dismissal when there is no "causal relationship between a defendant's conduct and a plaintiff's constitutional deprivation").

Defendant Westbrook that he needed to be removed from barrack 8 because inmate Askew threatened him. *Id.* Defendant Westbrook allegedly replied: "Oh, we don't worry about him with all that loud talking." *Id.* He then left without taking any action to protect Plaintiff from Askew. *Id.*

In grievance EAM 14-39, Plaintiff told prison officials that Askew said: "This may be a set up, looks like some of Westbrook's mess. [Your] snitching butt is gonna get up out of here." *Doc. 27, Ex. 3 at 1.* However, Plaintiff did *not* go on to say (as he does in his Amended Complaint) that he later reported Askew's threat to Defendant Westbrook or that he otherwise told Defendant Westbrook he was in danger of being harmed by Askew.

Without those essential allegations, ADC officials were *not* on notice that Plaintiff was alleging that Defendant Westbrook was *personally involved* in failing to protect Plaintiff from Askew. For that reason, in denying grievance EAM 14-39, Defendant Burl discussed only the allegation that *Defendants Munn and Ford* failed to protect Plaintiff from harm. *Id. at 2.* On appeal, Plaintiff had the opportunity to clarify that he was also alleging that Defendant Westbrook failed to protect him, but he did not do so. Instead, his appeal only alleged that Defendants "Lt. Munn & Capt. Ford" failed to protect him from harm. *Id.*

Because ADC officials never investigated or reached the merits of *any*

allegations made by Plaintiff against Defendant Westbrook, Plaintiff's failure to protect claim against Defendant Westbrook should be dismissed, without prejudice, based on Plaintiff's failure to properly exhaust that claim. *See Burns*, 752 F.3d at 1141 (finding no exhaustion where the "ADC was not asked to evaluate the conduct" of one of the Defendants "or the distinct § 1983 claims first asserted" by the prisoner against that Defendant in his amended complaint).

### III.   Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' Motion for Partial Summary Judgment (Doc. 27) be GRANTED.

2.    All claims raised against Defendants, in their official capacities, be DISMISSED, WITH PREJUDICE.

3.    The claims raised against Defendants Scott, Williams, Westbrook, Burl, and Thorne, in their individual capacities, be DISMISSED, WITHOUT PREJUDICE, due to a lack of exhaustion.

4.    Plaintiff be allowed to PROCEED with his failure to protect claims against Defendants Ford and Munn, in their individual capacities only.

5.    The Court CERTIFY, pursuant to 28 U.S.C. § 1915 (a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be

taken in good faith.

Dated this 21st day of August, 2015.

UNITED STATES MAGISTRATE JUDGE