## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

**COREY DEWBERRY,**
**ADC #103900**                                                                        **PLAINTIFF**

**v.**                          **Case No.  2:14-cv-00137-KGB/JTR**

**RODNEY FORD, Captain,**
**East Arkansas Regional Unit,** *et al.*                              **DEFENDANTS**

### ORDER

This Court has reviewed the Recommended Partial Disposition submitted by United States

Magistrate Judge J. Thomas Ray (Dkt. No. 37).  Plaintiff Corey Dewberry filed a motion for

extension of time to file objections to Judge Ray's Recommended Partial Disposition (Dkt. No. 40).

The Court grants the motion for extension of time and considers as timely filed Mr. Dewberry's

objections (Dkt. Nos. 40, 42).  After carefully considering these documents and making a *de novo*

review of the record in this case, the Court approves of and adopts in its entirety the Recommended

Partial Disposition.

### I.      Background

Mr. Dewberry is a prisoner in the East Arkansas Regional Unit ("EARU") of the Arkansas

Department of Corrections ("ADC").  He filed a *pro se* action under 42 U.S.C. § 1983 alleging that:

(1) on December 18, 2013, defendants Captain Rodney Ford, Lieutenant John Munn, Sergeant Frank

Scott, Sergeant Yolaunda Williams, Sergeant Carshun Westbrook, and Warden Danny Burl failed

to protect him from being attacked by two prisoners, and (2) defendant Officer Ricky Thorne issued

a false disciplinary to retaliate against him for filing grievances concerning the December 18, 2013,

attack (Dkt. Nos. 2, 5).

The defendants filed a motion for partial summary judgment, and Mr. Dewberry filed a response (Dkt. Nos. 27, 34). The undisputed facts show that in December 2013, Mr. Dewberry was living in barrack 8 at the EARU, along with Frank Askew, Mr. Askew's nephew, and numerous other prisoners. On December 9, 2013, Mr. Dewberry and Mr. Askew had a verbal argument. As a result, Mr. Dewberry was moved to barrack 3. On December 17, 2013, Mr. Dewberry was moved back into barrack 8, where Mr. Askew and his nephew were still living. On December 18, 2013, Mr. Askew and his nephew attacked Mr. Dewberry, beat him with a cane, and stabbed him with a shank.

After the attack, Mr. Dewberry submitted three different grievance forms—EAM 14-39, EAM 14-98, and EAM 14-113. In grievance 14-39, Mr. Dewberry named defendants Lt. Munn, Capt. Ford, Sgt. Williams, and Sgt. Scott. Mr. Dewberry stated that Sgt. Williams and Sgt. Scott escorted him from barrack 3 to barrack 8. He alleged that one of his attackers made a reference to "Daddy Burl," but Mr. Dewberry did not otherwise mention Warden Burl in grievance 14-39 (Dkt. No. 27, Ex. 3, *Grievances*, at 1). In that same grievance, Mr. Dewberry alleged that one of the attackers told him "this looks like some of Westbrook's mess," referring to Sgt. Westbrook (*Id.*). Mr. Dewberry did not discuss Sgt. Westbrook any further in grievance 14-39.

After Warden Burl denied grievance 14-39, Mr. Dewberry filed an appeal stating that "Warden Burl is holding me responsible for Lt. Munn and Capt. Ford's non-execution of duties" (*Id.*). Warden Burl did not discuss Sgt. Williams or Sgt. Scott when he declined to take action on Mr. Dewberry's grievance. Mr. Dewberry appealed Warden Burl's decision. In his appeal statement, Mr. Dewberry stated, "Lt. Munn and Capt. Ford allowed events to transpire that resulted in the stabbing" (*Id.*, at 2). He did not mention any other defendants in his appeal statement. The Arkansas Department of Correction ("ADC") Deputy who reviewed Mr. Dewberry's appeal

determined:

> Your complaint is on 12/17/2014, Staff knowingly moved you back into a barrack with an inmate whom you had been moved away from due to a previous verbal altercation.  You claim staff failed to protect you.
>
> After reviewing your appeal and all supporting documentation, I find documentation indicate you were moved from 8 barracks to 3 barracks on 12/9/2013, due to a verbal altercation with inmates in 8 barracks; records also indicate you were moved back to 8 barracks on 12/17/2013 with the same inmates and on 12/18/2013 you were involved in a physical altercation with some of the same inmates you were involved in the verbal altercation with.  Captain Ford states you were assigned to barrack 8 per Classification.  Due to the evidence submitted in your appeal, I find your appeal with merit.
>
> Appeal upheld.
>
> By way of this response, I will instruct the unit Warden to take Corrective Action against staff and forward a copy to my office.

(*Id*., at 3).  After the appeal of grievance 14-39, Mr. Dewberry filed grievances 14-98 and 14-113

(*Id*.).  Warden Burl denied those grievances as duplicates of 14-39.  Mr. Dewberry appealed Warden

Burl's decision, which was affirmed by the ADC Deputy.

## II.     Analysis

### A.     Official Capacity Claims

Mr. Dewberry filed his complaint and amended complaint against defendants in their official

and individual capacities.  Mr. Dewberry only seeks monetary damages.  In his objections to the

Recommended Partial Disposition, Mr. Dewberry contends that the official capacity claims against

defendants should not be dismissed "due to staff placing plaintiff life, health and safety in danger"

by placing him back in barrack 8 after he had been removed because of a verbal altercation with an

inmate assigned to barrack 8 (Dkt. No. 42).  Mr. Dewberry contends that the assault that occurred

after he was returned to barrack 8 was the result of inadequate staffing.  Further, Mr. Dewberry

maintains that Warden Burl did not discipline the officers who moved Mr. Dewberry from barrack 3 to barrack 8.  Mr. Dewberry contends that the fact that the Deputy Director ordered "Warden Burl to take corrective action [is] proof of exhaustion remedy" (Dkt. No. 42).  He maintains that the only defendant to be dismissed due to lack of exhaustion is Officer Thorne.  Mr. Dewberry also contends that defendants are not entitled to assert the defense of sovereign immunity and cites this Court to *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991), and *Walters v. W. State Hosp.*, 864 F.2d 695 (10th Cir. 1988), as support.

The cases cited by Mr. Dewberry do not apply to his fact situation.  Judge Ray recommends dismissal of Mr. Dewberry's claims against defendants in their official capacities based on sovereign immunity, not qualified immunity.  The Eighth Circuit has held that, based on the doctrine of sovereign immunity, § 1983 provides no cause of action against agents of the State acting in their official capacities when the plaintiff seeks only monetary damages.  *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012).  This Court is required to follow Eighth Circuit precedent, and the Court adopts the analysis of this issue set forth in the Recommended Partial Disposition.

## B.    Exhaustion

Next, this Court turns to Mr. Dewberry's contention that each of his claims is exhausted.  The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) *invalidated on other grounds by Siggers-El v. Barlow*, 433 F.Supp.2d 811 (E.D. Mich. 2006).  The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit,

4

reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006). In *Jones*, the Court said, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id*. at 211. The PLRA requires that inmates fully and properly exhaust their administrative remedies as to each claim in the complaint prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90–91. Thus, to satisfy the PLRA, a prisoner must fully comply with the specific procedural requirements of the incarcerating facility.

For an ADC inmate, full and proper exhaustion of administrative remedies requires that the inmate file an informal resolution form, file a grievance to the Warden (if the informal resolution attempt is unsuccessful), and appeal the denial of that grievance to the ADC Deputy/Assistant Director (Dkt. No. 27, Ex. 2, *ADC Admin. Directive*, 4–5). The provision of the ADC exhaustion policy at issue here states, "[g]rievances must specifically name each individual involved for a proper investigation and response to be completed by the ADC" and "[i]nmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." *Id*. In addition, the grievance procedure states: "[i]nmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission

claim. If this is not done, their lawsuits or claims may be dismissed immediately." *Id*. Finally, the grievance forms themselves remind inmates that in the grievance they must state the name of personnel involved.

In the present case, Mr. Dewberry submitted three different grievance forms—EAM 14-39, EAM 14-98, and EAM 14-113. In grievance 14-39, Mr. Dewberry named defendants Lt. Munn, Capt. Ford, Sgt. Williams, and Sgt. Scott. The parties agree that Mr. Dewberry exhausted his claims against defendants Lt. Munn and Capt. Ford by following all ADC administrative procedures for grievance 14-39. Therefore, this Court focuses on defendants Sgt. Williams, Sgt. Scott, Warden Burl, and Sgt. Westbrook.

### 1.      Sgt. Williams and Sgt. Scott

In grievance 14-39, Mr. Dewberry stated that defendants Sgt. Williams and Sgt. Scott escorted him from barrack 3 to barrack 8. That statement, however, is the only statement regarding these two defendants in grievance 14-39. In his amended complaint, Mr. Dewberry alleged that he repeatedly warned Sgt. Scott and Sgt. Williams about the danger of moving him back to barrack 8. Mr. Dewberry did not include that information in grievance 14-39. After Warden Burl denied grievance 14-39, Mr. Dewberry filed an appeal alleging that "Warden Burl is holding me responsible for Lt. Munn and Capt. Ford's non-execution of duties" (Dkt. No. 27, Ex. 3, *Grievances*, at 2). He did not mention defendants Sgt. Williams or Sgt. Scott.

Although Mr. Dewberry mentioned defendants Sgt. Scott and Sgt. Williams in grievance 14-39, Warden Burl did not discuss Sgt. Williams or Sgt. Scott when he declined to take action on Mr. Dewberry's grievance. In his appeal statement, Mr. Dewberry unambiguously states, "Lt. Munn and Capt. Ford allowed events to transpire that resulted in the stabbing." The ADC Deputy who

reviewed Mr. Dewberry's appeal referred generally to the actions of the staff, not to Lt. Munn or Capt. Ford only (Dkt. No. 27, Ex. 3, *Grievances*, at 3).

The record evidence shows that although Mr. Dewberry named Sgt. Williams and Sgt. Scott in his grievance, he did not specifically name them in his appeal statement.  Further, when he named them in the grievance, he did not allege that either of them knew that he had previously gotten into an argument with Mr. Askew or was otherwise in danger of being harmed if he returned to barrack 8.  He stated only that they escorted him from barrack 3 to barrack 8.

Although the appeal response indicates that the ADC addressed the actions of the named staff members in general, Mr. Dewberry did not name all staff members when taking his appeal and his identification of Sgt. Williams and Sgt. Scott in his grievance was not sufficient to put the ADC on notice of a complaint regarding their actions, knowledge, or intent.  The ADC policy specifically requires Mr. Dewberry to name these individuals at every level of the grievance process (Dkt. No. 27-2, 4–5 (ADC Adm. Dir. 12-16 § IV(N) (advising inmates "that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission claim" and warning that lawsuits may be dismissed immediately if this is not done))).  For these reasons, this Court agrees with the Partial Recommended Disposition that Mr. Dewberry did not satisfy the PLRA requirement of exhausting administrative remedies with regard to defendants Sgt. Williams and Sgt. Scott in grievance 14-39. Moreover, on this record, there is insufficient evidence to conclude that the ADC actually reviewed allegations of misconduct against Sgt. Williams and Sgt. Scott.  Therefore, this Court adopts the Partial Recommended Disposition to grant defendants' motion for summary judgment on Mr. Dewberry's claims against Sgt. Williams and Sgt. Scott.

##### 2.      Warden Burl

Next, this Court turns to Mr. Dewberry's allegations against Warden Burl.  In his amended complaint, Mr. Dewberry contends that Warden Burl failed to prevent the attack or failed to take corrective action against Lt. Munn and Capt. Ford after the attack.  Mr. Dewberry did not raise either of these issues at the administrative level.  Therefore, this Court adopts the Partial Recommended Disposition to grant the defendants' motion for summary judgment on Mr. Dewberry's claims against Warden Burl for failure to exhaust administrative remedies as required by the PLRA.

In grievance 14-39, Mr. Dewberry stated that one of the inmates said he was going to "tell Daddy Burl."  Mr. Dewberry's grievance contains no other reference to Warden Burl and does not allege any action by Warden Burl relating to Mr. Dewberry's transfer from barrack 3 to barrack 8.  Mr. Dewberry filed two subsequent grievances, EAM 14-098 and EAM 14-0113 (Dkt. No. 27, Ex. 3, *Grievances*).  In those grievances, Mr. Dewberry did not mention Warden Burl in the unit level grievance statement.  Instead, after Warden Burl denied each of those grievances as duplicative of grievance 14-39, Mr. Dewberry asserted that Warden Burl was refusing to hold his staff responsible for their actions and was refusing to take corrective measures against the staff involved.  The ADC grievance procedure does not permit inmates to raise new issues on appeal that were not part of their original grievance (Dkt. No. 27-2, at III(D), IV(G)(2)).  In fact, the grievance appeal form specifically states, "Do not list additional issues, which are not part of your original grievance as they will not be addressed" (Dkt. No. 27, Ex. 3, *Grievances*, at 5, 8).  Mr. Dewberry's complaints against Warden Burl were additional issues not raised in his original grievance.  As a result, those issues could not properly be considered during the appeal process.  Because Mr. Dewberry did not follow the proper grievance procedure with regard to his complaints against Warden Burl, he did not exhaust his

administrative remedies as required by the PLRA.  *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)

("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural

rules because no adjudicative system can function effectively without  imposing some orderly

structure on the course of its proceedings.").

### 3.     Sgt. Westbrook

Finally, this Court adopts the Partial Recommended Disposition to grant defendants' motion

for summary judgment with regard to Mr. Dewberry's claims against Sgt. Westbrook.   In his

amended complaint, Mr. Dewberry contends that he advised Sgt. Westbrook that he needed to be

removed from barrack 8 because he was threatened by another inmate.  Mr. Dewberry contends that

Sgt. Westbrook left without taking action to protect Mr. Dewberry from the other inmate.  Like Mr.

Dewberry's allegations against Warden Burl, these allegations against Sgt. Westbrook do not appear

in any of Mr. Dewberry's grievances.   In grievance 14-39, Mr. Dewberry alleged that, upon Mr.

Dewberry's return to barrack 8, another inmate stated, "this may be a set up, looks like some of

Westbrook's mess. [Your] snitchin butt was gonna get up out of there."  (Dkt. No. 27, Ex. 3,

*Grievances*, at 1).  He did not allege that he informed Sgt. Westbrook of these comments or that Sgt.

Westbrook ignored his concerns.

To reiterate, the ADC grievance procedure requires that inmates specifically name each

individual involved so that the ADC may conduct a proper investigation and provide an appropriate

response.  The grievance form filled out by Mr. Dewberry required that he "be specific as to the . .

. name of personnel involved" (Dkt. No. 27-3, at 1, 4, and 7).   Because he did not name Sgt.

Westbrook or otherwise mention any actions taken by Sgt. Westbrook, Mr. Dewberry did not exhaust

his administrative remedies with regard to the allegations against Sgt. Westbrook.  *Jones*, 549 U.S.

at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

**III.    Conclusion**

This Court adopts the Recommended Partial Disposition (Dkt. No. 37).   It is therefore ordered that defendants' motion for partial summary judgment is granted (Dkt. No. 27).   The Court dismisses with prejudice all claims raised against defendants in their official capacities.   The Court dismisses without prejudice the claims against Officer Thorne, Sgt. Williams, Sgt. Scott, Warden Burl, and Sgt. Westbrook in their individual capacities.   Mr. Dewberry may proceed with his failure to protect claims against Capt. Ford and Lt. Munn in their individual capacities only.   This Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Order would not be taken in good faith.

Dated this 2nd day of March, 2016.


Kristine G. Baker
United States District Judge